**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CENTURY SURETY COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **2:08-cv-860** |
| | ) | |
| **QSC PAINTING, INC. and JAMES** | ) | |
| **WATERS,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending now before the Court is PLAINTIFF, CENTURY SURETY COMPANY'S,

MOTION FOR SUMMARY JUDGMENT, docket entry number 35 (Doc. # 35), with brief in

support (Doc. # 36), and concise statement of material facts (Doc. # 37); QSC PAINTING,

INC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR

SUMMARY JUDGMENT (Doc. # 39), with counter statement of material facts (Doc. # 38); and

PLAINTIFF, CENTURY SURETY COMPANY'S, REPLY IN FURTHER SUPPORT OF ITS

MOTION FOR SUMMARY JUDGMENT (Doc. # 40), with additional exhibits (Doc. # 41), and

response to Defendant's concise statement of material facts (Doc. # 42).  Argument was heard

regarding the motion on December 7, 2009, and the motion is ripe for disposition.  For the

reasons that follow, the motion will be granted.

### Statement of the case

Plaintiff Century Surety Company ("Century Surety") filed its complaint for declaratory

judgment against Defendants QSC Painting, Inc. ("QSC Painting") and James Waters seeking a

declaration that it is not required to indemnify QSC Painting or any other person or entity in any

of a number of lawsuits and claims arising from on-the-job injuries sustained by Waters on or

about June 20, 2006 while Waters was working for QSC Painting.  Doc # 1.  Also originally

named as defendants were Kentucky corporations E.ON U.S. Services, Inc., LG&E Energy, Inc., and Kentucky Utilities Company; which three were subsequently dismissed voluntarily by Century Surety. *See* Doc. ## 11 and 12.

Defendant QSC Painting is an industrial painting contractor engaged in the business of, *inter alia*, painting electrical transformers and related electrical equipment for power utility companies nationwide.  Plaintiff Century Surety issued a commercial general liability insurance policy to QSC Painting beginning in March 2002, and continued to do so through March 2008, a period spanning the time relevant to the claims *sub judice*, with QSC Painting having renewed the policy every year.  The policy at issue, number CCP402967, was effective from March 30, 2006 to March 30, 2007.

All policies issued by Century Surety to QSC Painting, including the policy at issue, included language in Section I, "Coverages", that Century Surety "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  All policies further note that Century Surety will "have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  With respect to defining the scope of the coverage, each policy included in relevant part:

> b.   This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)   The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>
> (2)   The "bodily injury" or "property damage" occurs during the policy period; ...

2

In Section V, "Definitions", the term "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

Also included in Section I, Century Surety set forth a number of exclusions, including an exclusion for employer's liability.  With respect to employer's liability, all policies, beginning with the first policy issued in 2002 and continuing without change through all policies issued to and renewed by QSC Painting, included an Action Over Exclusion provision with the following language:

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**ACTION OVER EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the following change is made to Coverage A.

2.      Exclusion:

**Exclusion e. Employer's Liability** is deleted in its entirety and replaced with the following:

e.      **Employer's Liability**

"Bodily injury" to:

(1)     An employee of the named insured arising out of and in the course of:

(a)     Employment by the named insured; or

(b)     Performing duties related to the conduct of the named insured's business; or

(2)     The spouse, child, parent, brother or sister of that "employee" as a

3

consequence of paragraph (1) above.

This exclusion applies:

(1)     Whether the named insured may be liable as an employer or in any
        other capacity; and

(2)     To any obligation to share damages with or repay someone else
        who must pay damages because of the injury.[1]

The heart of the dispute arises from work contracted by QSC Painting with utility companies in Kentucky.  E.ON U.S. Services, Inc ("E.ON"), LG&E Energy, Inc. (LG&E"), and Kentucky Utilities Co. ("KU"), collectively referred to as the three Kentucky utility companies, operate as regulated electrical utilities providing power to customers in Kentucky and certain parts of Virginia.  During the operative time period, QSC Painting entered into two (2) contracts with these companies for work, the performance of which led to an injury to Defendant James Waters and has precipitated a string of litigation.  The first contract was a General Services Agreement ("GSA") between the three utility companies and QSC Painting, which set forth basic terms of their relationship and agreed that any future contracts between them for specific services would be controlled by the GSA.  A subsequent contract was entered into on or about May 22, 2006, between QSC Painting and E.ON for painting of structural steel and equipment at five (5) substations in Kentucky, one of which is identified as Lexington substation number 28.[2]  More

---

[1]  The only difference between the Action Over Exclusion language and the policy's imbedded Employer's Liability language is the Action Over Exclusion's omission of the sentence at the end, "The exclusion does not apply to liability assumed by the insured under an 'insured contract.'"

[2]  The Court notes that any distinctions among the three Kentucky utility companies with respect to their collective interaction with QSC Painting does not appear to legally impact the dispute between Century Surety and QSC Painting.  The parties have not specified in detail the differences between the three other than obliquely, for example KU apparently owns the

particularly, this declaratory judgment action stems from two civil suits filed in Kentucky, each of which will be described seriatim.

A.  Waters' personal injury action against the three Kentucky utility companies

On or about June 20, 2006, QSC Painting employee James Waters was severely injured when 69,000 volts of electricity entered his body while he was working in and around Lexington substation number 28.  After suffering his injuries, Waters received benefits under a workers' compensation policy maintained and paid for by QSC Painting.[3]  On June 13, 2007, Waters filed a personal injury action against the three Kentucky utility companies in Fayette County Circuit Court, Kentucky.  Waters alleged claims against the Kentucky utility companies for, *inter alia*, negligence and breach of the contract between the companies and QSC Painting, of which Waters claimed to be an intended beneficiary.  Among the forms of relief sought, Waters demanded punitive damages.

By way of written correspondence dated July 30, 2007, the Kentucky utility companies, through counsel, contacted QSC Painting seeking defense and indemnification in the Waters' personal injury suit.  QSC Painting referred the letter to Century Surety for response.  On or about August 14, 2007, Century Surety responded directly to the utilities companies declining the request to tender a defense and indemnity based upon its understanding and interpretation of the terms of its commercial general liability insurance policy issued to QSC Painting.  In particular,

---

electrical substation where Defendant John Waters was injured yet E.ON was the company with which QSC Painting contracted for the work to be performed.  *See* Doc. # 35 at Exhibit O.  In fact, all references to the three Kentucky utility companies within the evidentiary record and filings of both parties are made in such a way that the three companies are treated as one.

[3]  QSC Painting's workers' compensation and employers' liability insurance policy was issued by the State Workers Insurance Fund.

Century Surety noted that the Action Over Exclusion, attached as one of the endorsements to the policy at Endorsement CGL 1702 (11/00), excluded any and all claims arising out of a bodily injury to an employee of QSC Painting, the named insured.  Century Surety further noted that the same Action Over Exclusion deleted one of the exceptions to the Employer's Liability exclusion in the main form of the policy, namely the Employer's Liability exclusion exception for liability assumed in an "insured contract", such as the contract between QSC Painting and the Kentucky utility companies.

B.  Kentucky utility companies breach of contract action against QSC Painting

On or about February 6, 2008, the three Kentucky utility companies filed a declaratory judgment action against QSC Painting in the United States District Court for the Eastern District of Kentucky seeking a declaration that QSC is required to indemnify, defend, and hold harmless those companies with respect to the Waters' personal injury action and the derivative Kentucky Public Service Commission investigation stemming from Waters' injury.  On or about October 1, 2008, the Kentucky utility companies filed an Amended Complaint, adding a breach of contract claim alleging that QSC Painting failed to provide and maintain a commercial general liability policy of insurance that included blanket written contractual liability to the extent required under the GSA.

## Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but

to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

The commercial general liability insurance policy was issued and accepted in Pennsylvania, and the insured's principle place of business is in Pennsylvania.  Plaintiff avers, without objection from either Defendant, that Pennsylvania law applies.  *See, e.g., American Contract Bridge League v. Nationwide Mutual Fire Ins. Co.*, 752 F.2d 71, 74-75 (3d Cir. 1985). The Court agrees.  As such, under Pennsylvania law, the "interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008)(*quoting Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007)).  "When the language of the policy is clear and unambiguous, we must give effect to the language." *Id.* (*quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 893 (2006)).  On the other hand, "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563,

7

566 (1983).  Contractual language is ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986).

## Legal Analysis

Where an insurer relies a policy exclusion as the basis for its denial of coverage and refusal to defend, such reliance is an affirmative defense upon which the insurer bears the burden of proof.  *See Madison Constr. Co. v. Harleysville Mutual Insurance Co.*, 557 Pa. 595, 605, 735 A.2d 100, 106 (1999)(citations omitted).  The interpretation of coverage under an insurance policy is a question of law.  *Madison*, 557 Pa. at 606, 735 A.2d at 106.  In the case of a policy provision that is ambiguous, that provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.  *Id.*  On the other hand, where the language of the contract is clear and unambiguous, a court is required to give effect to that language.  *Id.* Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense" when applied to a particular set of facts.  *Id.*

Plaintiff's motion for summary judgment focuses on two general questions.  First, in light of the express language of the policy, is either the personal injury action or the breach of contract action excluded from coverage?  Second, if the answer to the first question is in the affirmative, did QSC Painting have a reasonable expectation that the policy would cover either claim, both of which stemmed from the injury to employee James Waters, and if so, should that expectation defeat the express exclusions of coverage?  For the reasons that follow, the Court finds that the express language of the policy does exclude the claims associated with both causes of action. Further, the Court finds that no cognizable reasonable expectation existed on the part of QSC

8

Painting sufficient to justify departure from the clear and unambiguous language of the policy.

A.  Coverage under the express terms of the contract

Century Surety's argument begins with the position that it is not responsible to defend or indemnify either of the two lawsuits.  Century Surety argues that the claim to defend and indemnify QSC Painting in litigation stemming from the injury to employee Waters is unambiguously excluded from the policies issued to QSC by way of the Action Over Exclusion regarding employer's liability.  Likewise, the subsequent dispute between the Kentucky utility companies and QSC Painting is in the nature of a breach of contract and not the result of an occurrence, as that term is defined within the policy.    The Court agrees.

1.       Waters' personal injury action is excluded from the policy

Defendant James Waters' three count personal injury suit brought against the Kentucky utility companies in the summer of 2007 alleged damages for the injuries sustained while working at the substation on behalf of QSC Painting on or about June 20, 2006.[4]  The parties do not dispute that Waters was injured on June 20, 2006 while performing duties related to the conduct of the business of QSC Painting while in the course of his employment.  As noted herein, the positions of the parties to that end are consistent with the fact that Waters received workers' compensation benefits for his injuries.  Furthermore, QSC Painting does not argue that the language of the Action Over Exclusion is ambiguous.  Accordingly, the Court holds that the

---

[4] While Waters' complaint contained three counts:   a) the intentional, reckless, negligent, or grossly negligent actions with respect to maintaining the power substation that resulted in injury; b) the tort of outrageous conduct resulting in injury; and c) a breach of the contract between QSC Painting and the Kentucky utility companies, with Waters being an intended beneficiary, reduced to their essence, each is in the nature of a personal injury action, demanding relief for injuries sustained by Waters as an employee of QSC Painting sustained in the course of that employment.

9

injuries to Waters which constitute the basis of his personal injury action against the three Kentucky utilities are occurrences of "bodily injury" as that term is defined in the Action Over Exclusion of QSC Painting's commercial lines insurance policy.  If the analysis was to stop at this point, the claims for defense and indemnification with respect to Waters' injuries would be excluded from the policy.

This is true despite the fact that Waters' personal injury action sought relief from the three Kentucky utilities as opposed to seeking relief from QSC Painting.  The Action Over Exclusion notes that the exclusion applies to "any obligation to share damages with or repay someone else who must pay damages because of the injury", as was attempted here when counsel for the three Kentucky utilities contacted QSC Painting, who in turn, contacted Century Surety seeking defense and indemnification.

a.      "Reasonable expectations" doctrine

Defendant QSC Painting does not deny that Waters was injured while performing duties related to his employment, nor does it deny that the language of the Action Over Exclusion would apply to the injuries sustained by Waters.  Instead, QSC Painting avers that it reasonably expected insurance coverage for injuries to employees in situations involving insured contracts. Under Pennsylvania common law, the doctrine of "reasonable expectations" provides, generally, that courts should look to the reasonable expectations of the insured when considering the extent of the coverage under the policy.  *See e.g. Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 925 (1987)(holding that where an "individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change.")

10

Under the reasonable expectations doctrine, QSC Painting argues that the Action Over Exclusion should not be incorporated into the policy because it was inserted into the policy after the original package quotation and package binder were issued and accepted, neither of which contained that particular exclusion, and after the first premium was paid.  QSC Painting further notes that no effort was taken on the part of Century Surety to alert it to the existence and insertion of the Action Over Exclusion, much less to seek the approval of QSC Painting for its inclusion.

The chronological sequence was as follows: Century Surety's package quotation was dated March 27, 2002, and the package binder was dated on or about May 8, 2002, which was accepted the following day.  The original policy, policy number CCP-228721, was subsequently issued on or about May 23, 2002, with an effective policy period of March 30, 2002 to March 30, 2003.  As noted above, there has been no change to the relevant employer's liability section or the Action Over Exclusion contained within the subsequent policies since the original policy's issue, and the policy was renewed annually four times from the date of original issue until the date of the injury to Waters.

"Pennsylvania case law ... dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured."  *Liberty Mut. Ins. Co. V. Treesdale, Inc.*, 418 F.3d 330, 344 (3d. Cir 2005)(*quoting Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir.1997)). "In most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations."  *Id.* (citation and internal quotations omitted). "Courts, however, must examine the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured."  *Id.* (citations and

internal quotations omitted).

The seminal decision of the Pennsylvania Supreme Court with respect to reconciling the language of an exclusionary clause with the reasonable expectations of the insured is *Standard Venetian Blind v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983).  In *Venetian Blind*, a self-employed businessman purchased a general liability policy on behalf of the company of which he was a partner.  The policy provided personal injury and property damage liability coverage for all sums which the insured would be legally obligated to pay as damages and further provided that the insurance carrier had the right and the duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage up to the policy limits.  The policy conspicuously displayed and sequentially listed the types of claims and losses which were excluded from the policy's coverage.  When the insured (Venetian) subsequently submitted a claim, the insurer agreed to pay for the damage caused by Venetian's products, but refused to defend an assumpsit action for work performed by Venetian or to pay for damages caused by Venetian's products themselves, based upon an exclusion provision which expressly excluded such losses from coverage under the policy.  The insured admitted that, although he had received a copy of the policy, he never read it because he had relied on the judgment of the insurance agency and that he had indicated to the agency that he wanted full coverage on everything he had.

In reaching its decision, the Pennsylvania Supreme Court held:

Although on this record we reject *Hionis,*[5] we note that in light of the manifest

---

[5]  In particular, the holding in *Venetian Blind* rejected the holding in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super.Ct. 511, 327 A.2d 363 (1974) that, "[W]here a policy is written in unambiguous terms, the burden of establishing the applicability of the exclusion or

inequality of bargaining power between an insurance company and a purchaser of insurance, *a court may on occasion be justified in deviating from the plain language of a contract of insurance*.  *See* 13 Pa.C.S. § 2302 (court may refuse to enforce contract or any clause of contract if court as a matter of law deems the contract or clause of the contract to have been 'unconscionable at the time it was made.') This record does not present such an occasion.  We hold only that where as here, the policy limitation relied on by the insured to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it.

503 Pa. At 307, 469 A.2d at 567 (emphasis added).  The decision in *Venetian Blind* recognized

that on occasion, courts may deny enforcement of a clause within the insurance contract for

equitable reasons, despite the fact that the circumstances before it did not.  The holding qualified

this potential by making clear that even in cases in which a court may deviate from the plain

language of a contract, such cases are heavily reliant on the factual context in which the claim

arises.  *Id.*

Subsequent decisions have further identified the parameters of the reasonable

expectations doctrine, all of which reinforce the doctrine's limited nature.  The Court of Appeals

of the Third Circuit has synthesized the standard of the reasonable expectation doctrine under

Pennsylvania law in the following manner:

An analysis of the reasonable expectations of the insured is rightly employed when a claimant alleges that the insurer engaged in deceptive practices toward the insured, either to misrepresent the terms of the policy or to issue a policy different than the one requested by the insured and promised by the insurer.  In this context, the clear and unambiguous language in the policy is one aspect of the totality of the circumstances that may lead to the reasonable expectations of the insured.  An insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.  However, even the most clearly written exclusion will not bind the insured where the insurer or its agent has created

---

limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him."  230 Pa.Super. At 517, 327 A.2d at 365.

in the insured a reasonable expectation of coverage.  Mere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage.

*West v. Lincoln Benefit Life Co.*, 509 F.3d 160,169 (3d Cir.2007) (internal citations omitted); *see also Venetian Blind*, 469 A.2d at 566 ("[I]n the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'").

Pennsylvania law recognizes only two limited circumstances in which the reasonable expectations doctrine may overcome the clear language of a policy: (1) to protect non-commercial insureds from policy terms which are not readily apparent; and (2) to protect non-commercial insureds from deception by insurance agents.  *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F..3d 431, 439-40 (3d Cir. 2006); *see also*, *Madison*, 735 A.2d at 109 n. 8, *citing Tonkovic v. State Farm Mut. Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987); and *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978).  Inherent in both circumstances is the requirement for some action on the part of the insurer to either unreasonably obscure the terms or outright deceive the insured, hence the equitable basis for relief.  Without evidence of such, the subjective expectations of the insured will fail to overcome the clear and unambiguous language of the policy.  Evidence of either circumstance is not present in evidentiary record before the Court in this instance.

        b.        Terms were readily apparent to the commercial insured.

With respect to the first circumstance, namely the presence of terms that are not readily apparent to the insured, the Court holds that the language of the Action Over Exclusion set forth in the policy is both clearly worded and conspicuously displayed.  It is important to further

reiterate that QSC Painting has not advanced an argument that the language of the Action Over

Exclusion is ambiguous.  Instead, QSC Painting argues that the exclusion provision was not

readily apparent given the fact that it was not included in the original 2002 quotation or 2002

binder.  Such argument is unavailing.

As a threshold matter, the Court notes that QSC Painting is clearly not a "non-

commercial insured", which, in of itself according to the precedent of the Pennsylvania Supreme

Court, may disqualify it from the protection of the reasonable expectations doctrine.[6]  Even if it

was a non-commercial insured, simply failing to read the policy does not trigger the application

of the reasonable expectations doctrine.  While QSC Painting is correct, that the Action Over

Exclusion is not contained within the original package quotation and binder, that does not

absolve QSC of the effects of the exclusion.  "Exclusions from coverage of an insurance policy

will be effective against an insured if they are 'clearly worded' and 'conspicuously displayed'

---

[6]  As QSC Painting accurately notes in its memorandum of law in opposition to the motion for summary judgment (Doc. # 39), notwithstanding the decisions of the Pennsylvania Supreme Court that have held the reasonable expectations doctrine to apply only to non-commercial insureds, decisions within the Third Circuit have extended the reasonable expectations doctrine to commercial insureds.  *See e.g., UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497 (3d Cir. 2004)(status of a large commercial enterprise as sophisticated purchaser of insurance did not automatically prevent application of reasonable expectations doctrine).  Despite the argument made by Century Surety, the Court is not inclined at this juncture to hold that the nature of QSC Painting as a commercial enterprise, alone and in of itself, automatically removes it from possible protection of the reasonable expectations doctrine.  This position is consistent with the line of precedent emphasizing that, though extremely limited, the doctrine is to be considered based upon the facts of each individual factual scenario.  While the Court will not attempt to suggest examples of a clause within a contract between an insurer and commercial insured that may be unconscionable so as to be unenforceable, the Court will further not unequivocally rule out the possibility that such a scenario may be possible.  It is enough to say that for all of the reasons included herein, to include but not being exclusively limited to the fact that QSC Painting is a commercial enterprise, the reasonable expectations doctrine is not available to QSC Painting.

without regard to whether the insured read the limitations or understood their significance."
*Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 761 (3d Cir. 1985).   The policy limitation relied
upon by Century Surety is clearly worded and conspicuously displayed.   Accordingly, QSC
Painting's failure to read the policy or to understand it does not afford it a basis for relief under
the reasonable expectations doctrine.   *Cf Venetian Blind*, 503 Pa. at 307, 469 A.2d at 567.

QSC Painting references a number of decisions demonstrating the reasonable
expectations of the insured being frustrated by maneuvers of an insurance company.   Doc. # 39 at
pp. 10 - 12 (referencing, *inter alia*, *Tonkovic*, 521 A.2d 920, and *Bensalem Township v. Int'l
Surplus Lines Ins. Co.*, 38 F.3d 1303 (3d Cir. 2004)).   The Court has reviewed those decisions
and finds that distinct and significant aspects in those factual circumstances are simply absent
here.   For example, in *Tonkovic*, the non-commercial insured applied for disability insurance and
the application included a specific request for desired coverage.   The application was accepted,
and the premium was paid.   The insured never received a copy of the actual policy.   Further, the
policy issued to the insured included an exclusionary clause not present in the policy he applied
for (which happened to essentially defeat the purpose of the specific coverage he sought), and
there was no effort to alert the insured of the insertion of the exclusion.   In comparison, this case
involves a commercial insured that did receive a copy of the policy which specifically included
the clear and unambiguous Action Over Exclusion, and further the insured received copies of
each subsequent policy as they were renewed annually.   QSC Painting apparently simply opted
not to read and/or familiarize itself with the terms of the policy.   QSC Painting's access to the
policy, the germane terms of which did not change during the four year time period preceding the
effective dates of the policy in place at the time of Waters' injuries, and its choice to simply opt

16

not to become familiar with the terms and conditions, are not circumstances suggesting, much less establishing, an unconscionable act on the part of Century Surety sufficient to deviate from the enforcement of the clear language.

      c.     There is no evidence of deception by agents of Century Surety.

In an effort to establish protection under the reasonable expectations doctrine, QSC Painting argues that indirect misrepresentations were made by insurance brokers in the course of the original purchase of the commercial liability insurance policy that should be imputed to Century Surety in favor of creating certain reasonable expectations.  In Pennsylvania, the general rule regarding insurance broker/agency issues stems from the decision in *Taylor v. Crowe*, 444 Pa. 471, 282 A.2d 682 (1971).  In *Taylor*, the insurance broker had been advising the insureds regarding their insurance needs for many years.  In that case, the insureds wanted insurance coverage for a bowling alley they owned, including protection against landslides.  *Id.* at 472-73, 282 A.2d at 682.  The broker assured the insureds that coverage (including for landslides) could be obtained for a low premium through a policy issued by a group of insurers.  *Id.*  When a landslide damaged the bowling alley six months later, the insureds were informed that the policy did not provide landslide protection.  *Id.* at 473, 282 A.2d at 682.  The insureds sued the insurance companies and the broker based on a theory of negligent misrepresentation regarding the scope of coverage provided.  *Id.* at 473, 282 A.2d at 683.  Subsequent testimony at trial demonstrated that the insureds had not instructed the broker to obtain insurance from a specific insurance company, but rather had advised him to go into the marketplace to obtain "the best insurance you can get."  *Id.* at 475, 282 A.2d at 683.

The Pennsylvania Supreme Court held that the broker was not acting as an agent for the

17

insurance companies and affirmed the trial court's directed verdict in favor of the insurers, noting in relevant part:

> Where a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which company shall become the insurer, a long line of decisions has declared the broker to be the agent of the insured; not the insurer.

*Id.* (*quoting Taylor v. Liverpool & L & G Ins. Co.*, 68 Pa.Super. 302, 304 (1917)).  The Supreme Court further indicated that a broker may in appropriate cases be considered the agent of the insurer, but there must be some evidence to infer such an agency relationship:

> A broker may be found to have acted on behalf of an insurer in negotiations between the latter and the insured so as to be deemed the agent of the insurer and not the insured ... *but there must be some evidence of an authorization, or some fact from which a fair inference of an authorization by the company might be deduced to make an insurance broker the agent of the company.*

*Id.* at 475, 282 A.2d at 683-84 (*quoting* Couch on Insurance, 2d, § 25:95) (emphasis added).

Much like the burden of proof in the application of the reasonable expectations doctrine, the party asserting agency has the burden of proving agency by a preponderance of the evidence. *Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.*, 412 Pa. Super. 140, 146, 602 A.2d 1348, 1351 (1992).  Following the decision in *Taylor v. Crowe*, Pennsylvania courts have typically adhered to the decision's general rule that an insurance broker unaffiliated with a particular insurance company is not the agent of the insurer absent of evidence to the contrary.  *See, e.g., Kairys v. Aetna Casualty and Surety Co.*, 314 Pa.Super. 502, 461 A.2d 269, 276 (1983); *see also Transguard Ins. Co. of America, Inc. v. Hinchey*, 464 F.Supp.2d 425, 431 (M.D.Pa.2006); *Comcast v. Chubb & Son, Inc.*, 2006 WL 2302686 at *14 (E.D.Pa., August 8, 2006).

The record before the Court fails to demonstrate any evidence of representations on the

part of any agent that could be attributable to Century Surety.  For its part, QSC Painting

provided the deposition testimony of John Pateras, the President of the company, conducted in

the course of the breach of contract action initiated by the three Kentucky utility companies.

Pateras testified that McGroarty & Bradburn was the insurance agent working on behalf of QSC

Painting, and that he had, at some point, a "generic conversation" wherein he stated to Bradburn

that QSC Painting wanted "full coverage on every scenario on every utility."  Doc. # 39 at

deposition transcript pages 251 - 253 of Exhibit 1.  On QSC Painting's behalf, McGroarty &

Bradburn obtained a number of quotes from various insurance companies, to include a quote

from USG Insurance Services, Inc., the broker working on behalf of Century Surety.[7]  There is no

evidence that USG Insurance or Century Surety had any contact with QSC Painting.  Pateras'

testimony establishes his understanding that McGroarty & Bradburn was not bound to any

particular insurance company, but rather was charged as his broker to search the insurance

marketplace to find the best insurance policy for QSC Painting.  Pateras' conversation regarding

his desire to obtain "full coverage on every scenario on every utility" does not trigger the

reasonable expectations doctrine.  An insured's vague references to its intent to obtain insurance

is not sufficient to invoke the reasonable expectations doctrine.  *Accord. Acceptance Ins. Co. v.*

*Battersby Associates*, Civ.A. 97-5098, 1998 U.S. Dist. LEXIS 17894 (E.D. Pa.. 1998)(an

expectation that the insurance policy covered "any suits brought against him for his or his

employee's negligence" was rejected as basis for the reasonable expectations doctrine absent

evidence of wrongdoing).

---

[7]  Under Pennsylvania law, Century Surety, a surplus lines carrier in the underwriting
process, was not permitted to have any direct communication with QSC Painting.

There are no facts of record to show that McGroarty & Bradburn was Century Surety's authorized representative or any evidence of an authorization, or some fact from which a fair inference of an authorization by Century Surety might be deduced. *See Taylor*, 444 Pa. at 475, 282 A.2d at 684. QSC Painting has failed to produce any evidence that either Century Surety or USG Insurance, on behalf of Century Surety, deceived McGroarty & Bradburn. Instead, QSC Painting argues that a genuine issue of material fact exists over whether it was misled by virtue of the fact that USG Insurance provided the quotation and binder to McGroarty & Bradburn, neither of which included the Action Over Exclusion.

The fact that a binder was issued that did not contain the relevant exclusion does not render the exclusion unenforceable. "It is the custom of the insurance industry, and sound public policy, to provide on-the-spot temporary insurance coverage in the form of a binder until the application information can be verified and a formal policy issued." *Klopp v. Keystone Ins. Companies*, 528 Pa. 1, 7 n. 5, 595 A.2d 1, 4 n. 5 (1991). It is well settled in Pennsylvania that a binder is a temporary contract that constitutes evidence that insurance coverage has attached at a specific time, and continues in effect until either the policy is issued or the risk is declined and notice thereof is given. *Strickler v. Huffine*, 421 Pa.Super. 463, 618 A.2d 430 (Pa.Super. 1992). As the Pennsylvania Supreme Court has observed, "temporary contracts of insurance affording coverage pending issuance of the formal policy by the insurer are well known in the insurance industry." *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346, 1348 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979).

The differences between the quotation/binder and the actual policy is not evidence of wrongdoing on the part of Century Surety sufficient to warrant the application of the reasonable

expectations doctrine.  Both the quotation and binder were each one page documents, while the commercial general liability policy was in excess of fifty (50) pages.  The Court refuses to hold that either a single page quotation or single page binder be given legal effect in 2006 over the actual language of a lengthy policy, one that was renewed four times without ever being reviewed by the insured, based solely upon a vague and general request from the insured to his own insurance agent made in 2002.  *Accord. Electric Insurance Company v. Rubin*, 1994 U.S. Dist. LEXIS 1837 (E.D. Pa. 1994); *aff'd* 32 F.3d 814 (1994).  To extend the limited reasonable expectation doctrine to an insured who "merely assumes that coverage is contrary to the clear and unambiguous language in the policy ... would allow the insured to invent coverage that is contrary to that expressly provided."  *Acceptance Ins. Co. v. Battersby Assoc., et al.*, 1998 U.S.Dist. LEXIS 17984 (ED Pa. 1998)(quotations omitted).

  2.  Breach of contract action.

  With respect to the second action, Century Surety avers that it owes no defense or indemnification for the breach of contract action initiated by the three Kentucky utility companies.  More specifically, Century Surety argues that the breach of contract action is not covered because it is not an "occurrence" that would require a duty to defend and indemnify.

  In considering such issues, courts are required to look to the language of the policy to determine under what circumstances the policy will provide coverage, and then to examine the claims against the insured to determine whether the allegations set forth in the pleadings constitute the type of instances that will trigger coverage..  *See e.g., Nationwide*, 562 F.3d at 596. Courts shoud begin with the terms of the policy, as they are the manifestation of the "intent of the parties."  *Bauhammers*, 938 A.2d at 920.  As noted above, the commercial general liability policy

issued to QSC Painting established the scope of coverage as being limited to an "occurrence".

Occurrence is defined within the policy as:

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

The next step requires a comparison of the policy terms with the allegations of the underlying claim. "It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 896 (2006)[8]. "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). If a court concludes that a "single claim in a multi-claim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog*, 193 F.3d at 746.

In United States District Court for the Eastern District of Kentucky, the Kentucky utility

---

[8] Like *Kvaerner*, the actions for which Century Surety seeks its declaratory judgment involves both the duty to defend and the duty to indemnify. As the Third Circuit recently noted, the duty to defend is broader than the duty to indemnify. *Nationwide Mutual Ins. Co. v. CPB International, Inc*, 562 F.3d 591, 596 n. 3 (3d Cir. 2009); *see also General Accident Ins. Co. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997)("duty to defend is separate from and broader than the duty to indemnify, [though] both duties flow from a determination that the complaint triggers coverage.") Accordingly, a finding that the duty to defend is not present will preclude a duty to indemnify. *Id*.

companies originally initiated a declaratory judgment action against QSC Painting, seeking a declaration and order that, under the terms of the GSA, QSC was required to indemnify, defend, and hold harmless the utility companies with respect to the Kentucky Public Service Commission investigation into Waters' injuries and with respect to the Waters' personal injury suit.  The three Kentucky utility companies amended the complaint to include, in addition to the declaratory judgment claims, breach of contract claims.  The amended complaint alleged that QSC Painting breached the indemnification provision of the GSA, namely that QSC failed to designate the utility companies as additionally insured parties and that QSC Painting failed to provide and maintain an umbrella/excess liability policy of insurance.

It is clear to the Court that the underlying amended complaint by the utility companies is one of a breach of contract, and not the result of an occurrence.  The relief sought by the utility companies include orders to QSC Painting to behave in ways consistent with the terms of the General Services Agreement, a contract between the parties.  Further, the amended complaint seeks monetary damages from QSC as a result of the alleged breach of that contract.  Weighing in Century Surety's favor is the fact that "Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims." *Pennsylvania Mfr's. Ass'n Ins. Co. v. L.B. Smith, Inc.*, 819 A.2d 1178, 1181 (Pa.Super.Ct. 2003).  "The purpose and intent of a general liability insurance policy is to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking." *Id.*  While an argument may be made that this point has not been specifically addressed by the Pennsylvania Supreme Court, this Court joins the reasoning of the Third Circuit and the well-established precedent to conclude that, if faced with this issue, the

23

Supreme Court would so hold.  *See Nationwide*, 562 F.3d at 598.  As such, given the specific terms of the insurance policy, which are consistent with existing precedent of state courts, the Court holds that the breach of contract action is not covered by the insurance policy issued by Century Surety, as it is not an occurrence.

## Conclusion

Taken either in parts or as a whole, there is no basis contained within the record to justify anything other than awarding summary judgment in favor of the Plaintiff.  As such, Plaintiff's motion for summary judgment will be granted.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CENTURY SURETY COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:08-cv-860** |
| **v.** | ) | |
| | ) | |
| **QSC PAINTING, INC. and JAMES** | ) | |
| **WATERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER OF COURT

AND NOW, this 8th day of March, 2010, in accordance with the foregoing Memorandum

Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED**, that PLAINTIFF,

CENTURY SURETY COMPANY'S MOTION FOR SUMMARY JUDGMENT, docket entry

number 35,  is **GRANTED**.

Judgment is entered in favor of Plaintiff, Century Surety Company, and against the

remaining Defendants, QSC Painting and James Waters.

The Clerk of Court shall docket this case closed.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:    Michael L. Magulick, Esquire
       Email: mmagulick@waymanlaw.com
       Susan S. Brown, Esquire
       Email: sbrown@kochdemarco.com

QSC PAINTING, INC.
Rochelle R. Koerbel, Esquire
Email: Rkoerbel@BlumlingGusky.com
Haig M. Sakoian, Esquire
Email: hsakoian@blumlinggusky.com

JAMES WATERS
Christopher W. Goode, Esquire
Email: cgoode@bhtriallaw.com
Michael H. Rosenzweig, Esquire
Email: mrosenzweig@edgarsnyder.com